IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AIDA U., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20-cv-5669 |
| v. | ) |
| | ) Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Aida U. ("Claimant") brings a motion for summary judgment to reverse the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIBs"). The Commissioner has brought a cross-motion for summary judgment seeking to uphold its decision to deny benefits. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §405(g). For the reasons that follow, Claimant's motion for summary judgment, (Dckt. #15), is denied and the Commissioner's motion for summary judgment, (Dckt. #16), is granted.

**I.     BACKGROUND**

  **A.     Procedural History**

On July 30, 2017, Claimant (then fifty-one years old) filed an application for DIBs, alleging disability dating back to June 13, 2016, due primarily to post-traumatic stress disorder

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to Claimant only by her first name and the first initial of her last name. Acting Commissioner of Social Security Kilolo Kijakazi has also been substituted as the named defendant. Fed.R.Civ.P. 25(d).

1

("PTSD") and major depressive disorder. (Administrative Record ("R.") 191). Claimant's date last insured was March 31, 2022. (R. 15). Her claim was denied initially and upon reconsideration. (R. 13). Claimant filed a timely request for a hearing, which was held on May 28, 2019, before Administrative Law Judge ("ALJ") Lana Johnson. (R. 31-73). On August 29, 2019, the ALJ issued a written decision denying Claimant's application for benefits. (R. 10-23). The Appeals Council denied review on July 28, 2020, leaving the decision of the ALJ as the final decision of the Commissioner. (R. 1-4). This action followed.

### B. The Social Security Administration Standard to Recover Benefits

To qualify for disability benefits, a claimant must demonstrate that she is disabled, meaning she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the SSA determines whether the claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at

*2 (N.D.Ind. Oct. 22, 2019). If a claimant establishes that she has one or more physical or mental impairments, the ALJ then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month durational requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, she is considered disabled and no further analysis is required. If a listing is not met, the analysis proceeds. 20 C.F.R. §404.1520(a)(4)(iii).

Before turning to the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), meaning her exertional and non-exertional capacity to work despite the limitations imposed by her impairments. Then, at step four, the SSA determines whether the claimant is able to engage in any of her past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, she is not disabled. *Id.* If she cannot undertake her past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform given her RFC, age, education, and work experience. If such jobs exist, the individual is not disabled. 20 C.F.R. §404.1520(a)(4)(v).

  **C.**  **The Evidence Presented to the ALJ**

When living in Sarajevo during the Bosnian Civil War, Claimant watched her father die from an explosion. (R. 323). Claimant herself was injured by a grenade, as were her two children. (*Id.*). After moving to the United States in 2001, Claimant worked as a department

manager at Walmart for fifteen years. (R. 211-13, 324). She stopped working in June 2016 and now seeks disability benefits for limitations stemming from depression, PTSD, and back pain.

### 1. Records from Claimant's Treating Physicians

Claimant's primary care provider, Dr. Kijana Seferovic, has diagnosed her with radiculopathy of the lumbar region, (R. 419), hypertension, (R.305), Vitamin D deficiency, (R. 310), hyperlipidemia, (R. 465), and obesity, (R. 309). Despite these limitations, Claimant consistently presented with "normal gait and normal station," (R. 307, 310), normal movement of all extremities, (R. 502), full range of motion, (R. 464), and "stable" blood pressure, (R. 465). Claimant has denied any extremity weakness. (R. 306).

On June 13, 2016, Claimant presented to Dr. Seferovic with complaints of severe depression, crying spells, and an inability to "tolerate being around people" or follow commands. (R. 300). Dr. Seferovic noted that Claimant appeared oriented and well-groomed, maintained good eye contact, and exhibited normal speech during her examination. (R. 301). She diagnosed Claimant with major depressive disorder, (*Id.*), and PTSD, (R. 308). One symptom of Claimant's PTSD was anxiety, which Claimant described as acute, constant, and incapacitating. (R. 306). Although Claimant was prescribed medication for depression in June, she reported ongoing symptoms with no significant improvement the following month. (R. 304, 306, 315). In September 2016, Dr. Seferovic indicated that Claimant could not return to work at Walmart due to being "very depressed." (R. 316-18, 440-42, 446-48).

Claimant began treating with psychiatrist Anjum Khaja, M.D., in February 2017. (R. 337). Dr. Khaja consistently recorded normal mental status examinations, despite Claimant's reports of ongoing subjective symptoms, such as nightmares and nervousness in crowds. Claimant generally appeared cooperative, calm, alert, and oriented, with improved and euthymic

mood, average intelligence, and intact thought process, memory, insight, judgment, and motor activity. (R. 326, 328, 331, 334, 337). When Claimant reported not doing well in April 2017, Dr. Khaja increased her medication. (R. 333). The next month, Claimant reported feeling better, sleeping better, and not having panic attacks. (R. 331). Although Claimant presented with a sad, constricted, and anxious affect in July, September, and October 2017, Dr. Khaja continued to record normal mental status examination findings. (R. 324, 326, 348).

In December 2017, Dr. Khaja completed a Mental Residual Functional Capacity Assessment on Claimant's behalf. (R. 383-85). She opined that Claimant had no deficits in understanding and memory, and some moderate deficits in concentration and persistence. (R. 383). Dr. Khaja rated Claimant's ability to perform semiskilled and skilled work as "fair," and her ability to perform unskilled work as "fair" to "good" outside of deficits in working with others, accepting instructions, dealing with criticism, and responding appropriately to changes in routine. (R. 384). Dr. Khaja explained that although Claimant's depression was "under control" on medication, she continued to have problems with noise and crowds. (R. 385).

### 2. Evidence from Claimant's Testimony

At the May 28, 2019 hearing, Claimant appeared with counsel and testified regarding the limiting effects of her impairments. Claimant explained that over the preceding five to six years, she had begun feeling progressively more uncomfortable around people. (R. 41). She described feeling "pressure" and like she can't breathe. (*Id.*). The feeling began affecting her work at Walmart and near the end of her employment, she missed work approximately three days per month and frequently arrived late. (R. 56). Although Claimant thinks that medication helps alleviate her mental health symptoms, (R. 48), she continues to disklike crowds, feels nervous when she leaves her apartment, and does not leave her apartment unaccompanied. Claimant

5

spends her days watching television, knitting, and reading. She "sometimes" naps for one to two hours. (R. 59). Claimant testified that she does not clean her house due to back pain, (R. 45), and she has a pain in her hand that limits her ability to grip, (R. 46). Claimant has not seen a doctor about her hand and is no longer receiving treatment for her back. (R. 42, 46).

### D. The ALJ's Decision

The ALJ applied the five-step inquiry required by the Act in reaching her decision to deny Claimant's request for benefits. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since her alleged onset date of June 13, 2016. (R. 15). At step two, the ALJ determined that Claimant suffers from the severe impairments of PTSD and major depressive disorder. (*Id.*). At step three, the ALJ concluded that Claimant does not have an impairment or combination of impairments that meets or medically equals one of the Commissioner's listed impairments, including listing 12.04 for "depressive disorder," 12.06 for "anxiety and obsessive-compulsive disorder," or 12.15 for "trauma- and stressor-related disorders." (R. 16). The ALJ found that Claimant's impairments cause mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting and managing herself. (R. 16-17). The ALJ also considered the "paragraph C" criteria and found that the evidence did not demonstrate that Claimant is unable to handle changes in her everyday life. (R. 17).

Before turning to step four, the ALJ determined that Claimant has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations: "[S]he is able to understand, remember, and carry out simple, routine, and repetitive tasks, use judgment limited to simple, work-related decisions and have occasional

interaction with supervisors, coworkers, and the general public." (R. 17-18). Based on these conclusions, the ALJ determined at step four that Claimant is not capable of performing her past relevant work as a loader unloader, stock clerk, cashier, or assistant manager. (R. 21). Even so, the ALJ concluded at step five that a sufficient number of jobs exist in the national economy that Claimant can perform given her RFC, including the representative positions of hand packager, commercial cleaner, and production helper. (R. 22). As such, the ALJ found that Claimant is not disabled. (*Id.*).

## II. STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and be free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical

7

bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

### III. ANALYSIS

Claimant generally asserts that the Commissioner's decision must be reversed because the ALJ: (1) improperly discounted eight of Claimant's impairments as non-severe; (2) failed to find that Claimant's impairments meet or medically equal four listed impairments; and (3) failed to support her finding that a sufficient number of jobs exist that a person with Claimant's RFC can perform. The Court finds that these arguments are largely waived, as Claimant fails to support them with citations to the record or relevant case law. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim."). Despite this finding, the Court will address each of Claimant's arguments to the extent it is possible to do so based upon the parties' briefing.

### A. The ALJ's finding that only Claimant's major depressive disorder and PTSD constitute severe impairments is supported by substantial evidence.

As noted above, at step two of the analysis, the ALJ determines whether a claimant has any "severe impairments," i.e., impairments that "significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c). "An impairment is 'not severe' only if it is 'a slight abnormality' that has 'no more than a minimal effect on the ability to

8

do basic work activities . . . .'" *Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016). Here, the ALJ found that Claimant's major depressive disorder and PTSD constitute "severe" impairments. (R. 15). Although Claimant agrees with these findings, she maintains that the analysis was deficient because the ALJ "did not consider or improperly discounted" her hypertension, hyperlipidemia, Vitamin D deficiency, back pain, obesity, sleep deprivation, and anxiety. (Dckt. #15 at 7). Claimant's step two argument fails for two reasons.

First, Claimant's assertion that the ALJ "did not consider" her various deficiencies ignores the ALJ's explicit discussion of Claimant's hypertension, hyperlipidemia, Vitamin D deficiency, back pain, and obesity at step two. (R. 15-16). The ALJ found that these impairments, while medically determinable, are not severe because no evidence from the record suggested that they cause more than minimal limitations on Claimant's ability to perform work activities. (R. 15-16). The ALJ also cited "normal" and "stable" examination results indicating that these impairments do not interfere with Claimant's daily functioning. (*Id.*). Claimant did not acknowledge these findings or present any evidence refuting them. Without evidence from either Claimant or a medical source that a certain impairment will limit the Claimant's functional capacity, the Court will not fault the ALJ for "failing to create limitations of [her] own." *Lemerande v. Berryhill*, No. 17-C-190, 2018 WL 1061462, at *7 (E.D.Wis. Feb. 26, 2018); *see also Weaver v. Berryhill*, 746 Fed.Appx. 574, 579 (7th Cir. 2018) (noting that it is plaintiff's burden "to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work"); *Richards v. Berryhill*, 743 Fed.Appx. 26, 30 (7th Cir. 2018) ("Richards bears the burden of showing that she had impairments that affected her ability to work.").[2]

---

[2] The ALJ's decision not to discuss Claimant's allegations of sleep deprivation or anxiety at step two also does not constitute error. There is not enough evidence in the record to suggest that these are medically

Second, even if the ALJ had erred by failing to designate one of the above impairments as severe, this error would not require reversal. The step two analysis is "merely a threshold requirement": if the ALJ finds at least one severe impairment, the evaluation proceeds. *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999). Accordingly, "any error that an ALJ commits at step two is harmless as long as the ALJ goes on to consider the combined impact of a claimant's severe and non-severe impairments" in the RFC analysis. *Loftis v. Berryhill*, No. 15 C 10453, 2017 WL 2311214, at n.1 (N.D.Ill. May 26, 2017) (citing *Curvin v. Colvin*, 778 F.3d 645, 648-49 (7th Cir. 2015)). Claimant's RFC arguments are addressed in Section IV(C), *infra*.

    **B.    The ALJ's finding that Claimant's impairments do not meet or equal a listed impairment is supported by substantial evidence.**

At step three, the ALJ found that Claimant's impairments do not meet or medically equal listing 12.04 (depressive disorder), 12.06 (anxiety and obsessive-compulsive disorder), or 12.15 (trauma- and stressor-related disorders). (R. 16-17). Claimant argues that these findings constitute reversible error, as does the ALJ's failure to consider whether Claimant's impairments meet listing 1.04 (disorders of the spine).[3]

---

determinable impairments at all, much less severe impairments. 20 C.F.R. §404.1508 (a "medically determinable" impairment is one that is established by "medical evidence consisting of signs, symptoms, and laboratory findings"). Physicians have generally treated Claimant's reports of sleep deprivation and anxiety as symptoms, rather than impairments in and of themselves. (R. 306).

[3] Claimant argues in passing that even if she does not specifically meet the criteria for listing 12.04, 12.06, or 12.15, "she demonstrates comparable mental health limitations throughout her medical records." (Dckt. #15 at 9). It is true that a claimant may show "medical equivalence" if her impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §404.1526(a). However, in order to meet this equivalence test, the claimant "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). Claimant fails to cite any evidence in support of her equivalence claim. Absent such evidence, an ALJ "does not have to separately discuss equivalence." *Deloney v. Saul*, 840 Fed.Appx. 1, 3 (7th Cir. 2020) (citing Social Security Ruling (SSR) 17-2p, 82 Fed. Reg. 15,263, 15,265 (Mar. 27, 2017) (an ALJ need not articulate specific evidence supporting a finding that an impairment does not medically equal a listed impairment; a simple statement of non-equivalence will suffice)).

10

The listings describe impairments considered "severe enough to prevent an individual from doing any gainful activity, regardless of [her] age, education, or work experience." 20 C.F.R. §§404.1525(a), 416.925(a). They "were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). To match a listed impairment, the plaintiff bears the burden of showing that her impairment meets "all of the specified medical criteria." *Id.* at 530. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* When a listing is relevant, the ALJ must: (1) identify the appropriate listing by name, (2) give more than a perfunctory analysis of the issues involved, and (3) consider an expert's opinion on the issue. *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004); *see also Cirelli v. Astrue*, 751 F.Supp.2d 991, 1002 (N.D.Ill. 2010). A listing discussion is perfunctory when an ALJ "provides nothing more than a superficial analysis" of the listing's criteria. *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004).

In her step three argument, Claimant cites only the number of each contested listing. She does not identify the impairments at issue, outline the listings' criteria, or explain how she meets each of those criteria with citations to the record. (Dckt. #15 at 9). Claimant's failure to make a properly supported argument on each of these points dooms her listing argument, for "[i]t is not this court's responsibility to research and construct the parties' arguments." *Carter v. Astrue*, 413 Fed.Appx. 899, 906 (7th Cir. 2011) ("conclusory analysis will be constructed as waiver."). Nonetheless, even setting waiver to the side, the Court finds that the ALJ's step three analysis was supported by substantial evidence.

1. **Claimant has not established that her impairment meets listing 1.04 (disorders of the spine).**

Claimant has been diagnosed with lumbar radiculopathy. (R. 419). To meet listing 1.04, she must also present evidence of one of the following: (1) motor loss – atrophy with associated muscle weakness or muscle weakness – accompanied by sensory or reflex loss and positive straight-leg raising test; (2) an operative note or pathology report confirming a diagnosis of spinal arachnoiditis; or (3) an inability to ambulate effectively as defined by the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.04. As the ALJ noted – and Claimant does not dispute – Claimant's examinations consistently indicated normal movement of all extremities, normal strength, normal gait, and normal station. (R. 16). Claimant does not cite, and the Court has not found, any mention of motor loss, sensory or reflex loss, straight-leg tests, or spinal arachnoiditis. In light of this evidence – or, more precisely, the lack thereof – the ALJ did not err by declining to explicitly consider listing 1.04. *See, e.g., Boucek v. Astrue*, No. 08 CV 5152, 2010 WL 2491362, at *6 (N.D.Ill. June 16, 2010) ("An ALJ is not required to consider listings that obviously do not apply.").

2. **Claimant has not established that her mental impairments meet listing 12.04 (depressive disorder), 12.06 (anxiety disorder), or 12.15 (trauma-related disorder).**

Listings 12.04, 12.06, and 12.15 contain three paragraphs: A, B, and C. Paragraph A requires that the presence of a particular mental disorder be medically documented. Paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to perform any gainful activity. A claimant will be deemed to meet a listing if she can satisfy the diagnostic description in paragraph A, and the criteria of either paragraph B or paragraph C. Even assuming that Claimant meets the threshold paragraph A requirement for these listings, her

step three argument fails because the ALJ's paragraph B and C findings against her were well-supported by the evidence.

Under paragraph B, an affective disorder must result in at least one extreme or two marked limitations in four areas of mental functioning. Here, the ALJ found that Claimant's impairments cause only mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting and managing herself. (R. 16-17). This determination is supported by the findings of Claimant's treating psychiatrist, Dr. Khaja. In a Medical Source Statement, Dr. Khaja reported that Claimant had no marked limitations in understanding and memory, or in sustained concentration and persistence. (R. 383). Although she found that Claimant's ability to work well with others was limited – noting Claimant has "poor or no" ability to work in coordination with or proximity to others; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in a routine work setting – Dr. Khaja made no finding as to whether these limitations were "extreme." (R. 384).

State agency consultants David Voss, Ph.D., and Melanie Nichols, Ph.D. were the only mental health consultants to make a finding as to whether Claimant has marked or extreme limitations in any paragraph B criteria, and they found that she did not. (R. 79, 92). "The ALJ may properly rely upon the [listing] opinion of these medical experts." *See Scheck*, 357 F.3d at 700.[4]

---

[4] Because the ALJ's step three finding was supported by the findings of the psychological experts in the record, Claimant's argument that the ALJ rejected "the opinions of the examining psychological experts" and "improperly ignored the psychological consultants' opinions" at step three, (Dckt. #15 at 8-9), is unfounded.

13

Under paragraph C, Claimant must show that her mental disorder is "serious and persistent," meaning she has:

> a medically documented history of the existence of the disorder over a period of at least [two] years, and there is evidence of both: (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [her] mental disorder; and (2) marginal adjustment, that is, [she has] minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life.

20 C.F.R. Pt. 404, Subpt. P, App. 1. Courts will find that a claimant has achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of her symptoms and signs and to deterioration in her functioning. *Id.*

Claimant asserts that she has been treated for depression for three years and is prescribed quetiapine and sertraline for her PTSD and depression, and the Court construes this as an argument that she met the paragraph C criteria. (Dckt. #15 at 9). The Court agrees that an antidepressant prescription from a primary care provider likely does constitute mental health treatment for the purposes of the paragraph C analysis. *See Michael M. v. Saul*, 1:19-cv-212, 2020 WL 57989, at *9 (N.D.Ind. Jan. 6, 2020) (noting that "depression is now one of the most common disorders treated in the primary care setting," and finding that "constant prescription medication management via . . . primary care providers" constitutes mental health treatment). However, Claimant cites no evidence indicating that, despite these diminished symptoms, she has only achieved "marginal adjustment." Although Claimant's testimony indicates that she does not leave the house unaccompanied, she does not argue that this symptom arose from changes in her environment or new demands, as paragraph C requires. *See Carl D. v. Saul*, No. 1:20-cv-47-JVB, 2021 WL 363599, at *3 (N.D.Ind. Feb. 3, 2021) ("[F]or the Paragraph 'C' criteria, it is not enough to identify symptoms or treatment – there must be 'changes or increased

14

demands [that] have led to exacerbation of your symptoms and signs and to deterioration in your functioning.'").

Furthermore, no opinion from a medical professional suggests that Claimant's symptoms are severe enough to constitute marginal adjustment. Again, the only medical professionals who evaluated whether Claimant met the criteria of paragraph C were the state agency consultants, and both of them found that she did not. (R. 79, 92). As the ALJ noted, Claimant's own treating providers routinely observed that she was cooperative, calm, well-oriented, well-groomed, and alert at her sessions, (R. 395, 403, 453, 456), and Claimant's primary therapist found that her depression was "under control on meds," (R. 385); *see Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006) ("Craig was of the opinion that Prochaska's mental condition was treatable and under control and controllable conditions do not entitle one to benefits or boost one's entitlement by aggravating another medical condition.") (internal quotation marks omitted). In sum: the ALJ's finding that Claimant does not meet the criteria of paragraph B or C was supported by expert opinions and citations to the medical record. Accordingly, there is no basis to disturb the ALJ's step three analysis.

**C.    The ALJ properly considered Claimant's subjective symptoms when formulating the RFC.**

At step five, the ALJ concluded that a sufficient number of jobs exist in the national economy that Claimant can perform given her RFC, (R. 17-18), including the representative positions of hand packager, commercial cleaner, and production helper. (R. 22). Claimant now argues that she cannot perform any of these jobs due to her: (1) history of tardiness and absences, (2) need to nap during the day, (3) hand tremors, and (4) inability to clean. Although Claimant frames this as a step five argument, the Court construes it as an argument that that the ALJ failed

to properly consider Claimant's subjective symptoms when fashioning Claimant's RFC and the hypotheticals posed to the VE.[5]

### 1. The ALJ properly evaluated Claimant's subjective allegations of frequent tardiness and absences, occasional napping, and hand tremors.

Any challenge to the ALJ's symptom evaluation faces a high hurdle. The Court will not overturn the ALJ's credibility finding unless it is "patently wrong," meaning it lacks any explanation or support in the record. *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir.2008). In this case, the Court finds that the ALJ did not err by discounting Claimant's allegations related to her history of tardiness and absences, need to nap, and hand tremors because the record either failed to substantiate or – worse yet – directly contradicted these claims.

The Court first notes that while Claimant cites a history of excessive work absences, she does not argue that her impairments *necessitate* such absences. (Dckt. #15 at 11). Indeed, her own treating psychiatrist found that they would not. Dr. Khaja concluded that Claimant's ability to sustain an ordinary routine without special supervision was "good," and classified Claimant's other time-management related abilities – the ability to maintain regular attendance and be punctual; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods – to be "fair," rather than "poor." (R. 384). Because the ALJ cited these findings in

---

[5] Claimant also argues that the ALJ's finding that Claimant's "ability to perform work at all exertional levels has been compromised by non-exertional limitations," should "preclude all work." (Dckt. #15 at 11). This argument misinterprets the ALJ's meaning. Rather than suggesting that Claimant cannot perform work at any exertional level *because of* non-exertional limitations, the ALJ found that Claimant cannot perform work at any exertional level *unless the work includes* non-exertional limitations. (R.22; R. 17-18 (specifying Claimant's non-exertional limitations)). Accordingly, the ALJ included non-exertional limitations in the RFC: restricting Claimant to work where she need only understand, remember, and carryout simple, routine, and repetitive tasks; use judgment limited to simple work-related decisions; and have occasional interaction with supervisors, coworkers, and the public. (R. 17-18).

her RFC analysis, (R. 20), her decision to discredit Claimant's testimony regarding tardiness and absences was well-founded. *See Manley v. Barnhart*, 154 Fed.Appx. 532, 536 (7th Cir. 2005) ("[T]he severity of . . . the claimant's subjective complaints need not be accepted insofar as they clash with other evidence in the record."); *see also Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (same).

Claimant's alleged need to nap was similarly uncorroborated. While Claimant testified that she "sometimes" naps for one to two hours during the day, (R. 59), her treating physicians never suggested that her impairments necessitate these naps. The ALJ was not required to incorporate a nap-related limitation when nothing supported it other than Claimant's testimony. *See, e.g., Candice A.Z. v. Kijakazi*, No. 19 C 8174, 2021 WL 3187783, at *10 (N.D.Ill. July 28, 2021); *Imse v. Berryhill*, 752 Fed.Appx. 358, 360-62 (7th Cir. 2018) (ALJ properly disregarded claimant's testimony of needing to lie down where "no physician, treating or otherwise, has ever indicated that there was a medical reason why she would need to lay down/nap as frequently as alleged during the day.").[6]

Claimant next argues that her hand tremors would "pose a problem" in each of the jobs suggested by the ALJ because "they all require the use of her hands." (Dckt. #15 at 11). While Claimant's medical records indicate that she experiences hand tremors, the tremors are uniformly described as "minimal." (R. 395, 453, 505). Claimant has never consulted a doctor about her hand problems, (R. 46), and no opinion in the record suggests that Claimant's tremors might limit her ability to work. The ALJ supported her finding that Claimant did not require any

---

[6] The Court also does not fault the ALJ for failing to explicitly acknowledge Claimant's nap-related allegations, as ALJ's are not required to assess the credibility a Claimant's statements on a symptom-by-symptom basis. *See Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012) (noting that "an ALJ's credibility findings need not specify which statements were not credible," including claimant's assertion that she "needed to lie down several times per day"); *Candice A.Z.*, 2021 WL 3187783, at *10.

17

physical RFC limitations by citing the opinion of state agency medical consultant Victoria Dow, M.D., who deemed Claimant's physical impairments "non-severe." (R. 20). Because Claimant points to no medical evidence contradicting this finding, she has failed to show that the ALJ's decision to discount her hand-related allegations was patently wrong.

Because the Court finds that the ALJ's analyses of Claimant's absences, need to nap, and hand tremors were not "patently wrong," the ALJ's decision not to incorporate corresponding limitations in the RFC will not be disturbed. *See Outlaw v. Astrue*, 412 Fed.Appx. 894, 898 (7th Cir. 2011) ("The ALJ needed only to include limitations in his RFC determination that . . . the ALJ found to be credible.").

### 2. Any arguable error created by the ALJ's finding that Claimant was able to perform the position of commercial cleaner is harmless.

The ALJ found that Claimant had the RFC to perform the positions of commercial cleaner, hand packager, and production helper. (R. 22). Claimant testified that she cannot clean due to her back pain. (R. 45). She now asserts that this testimony, in and of itself, was sufficient to require a finding that she is unable to clean in a commercial or outside setting. (Dckt. #15 at 11). Although Claimant has waived this argument by failing to cite any medical records in support of her allegation that her back pain limited her ability to clean,[7] the Court's independent review of the record has found evidence suggesting that Claimant's ability to work as a commercial cleaner may be limited due to problems with her ability to bend. In particular, the record shows that Claimant presented with "decreased extension, decreased flexion, and decreased lateral bending." (R. 301). Although these findings do not necessarily translate into

---

[7] *See Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008) ("The claimant bears the burden of producing medical evidence that supports her claims of disability."); *Heather M. v. Berryhill*, 384 F.Supp.3d 928, 934 (N.D.Ill. June 5, 2019) ("Judges are not required to sift through the record without direction from counsel . . . and find evidentiary support for contentions.").

18

an inability to perform as a commercial cleaner,[8] they do contradict the ALJ's statement that Claimant "maintained normal findings" during examinations related to back pain, (R. 16).

Nonetheless, even if the record established that Claimant's back issues rendered her unable to perform the position of commercial cleaner, the ALJ's finding to the contrary was harmless error. Claimant does not argue that her inability to clean would preclude her from working as a hand packager or a production helper. As the ALJ found, there are 600,000 hand packager jobs and 400,000 production helper jobs available in the national economy. (R. 22). Jobs in this quantity constitute a sufficiently significant occupational base. *See, e.g., Alvardo v. Colvin,* 836 F.3d 744, 751 (7th Cir. 2016) (error is harmless where claimant fails to show how limitations would disqualify him from other jobs identified by the ALJ); *DuCharme v. Kijakazi*, No. 21-2204, 2022 WL 3287974, at *3 (7th Cir. Aug. 11, 2022) (finding 31,000 jobs nationally to be significant); *Mitchell v. Kijakazi*, 2021 WL 3086194, at *2 (7th Cir. July 22, 2021) (finding 30,000 jobs nationally to be significant). Consequently, any arguable error created by the ALJ's finding that Claimant could perform the position of commercial cleaner was harmless.

---

[8] *See Richards*, 743 Fed.Appx. at 30 ("Richards just lists a variety of symptoms (such as pain in her extremities and headaches) that 'hint' at a 'larger on-task problem.' But pointing to various diagnoses and complaints and saying that they might hinder Richards is insufficient to establish the existence of a functional limitation.").

## CONCLUSION

For the foregoing reasons, Claimant's motion for summary judgment (Dckt. #15) is denied and the Commissioner's motion for summary judgment (Dckt. #16) is granted. The decision of the ALJ is affirmed.

**ENTERED:** September 8, 2022

**Jeffrey I. Cummings**
**United States Magistrate Judge**